May it please the court. My name is Viswanathan Rudrakumaran. I represent Petitioner Adangesan Sundaralingam, Tamil from Sri Lanka, who has been detained for nearly 5 years in the US. The main issue in this case is the adverse credibility of the IJ. And we believe for four main reasons the IJ's credibility findings cannot be sustained. First, under the Churney analysis as the court just observed in the previous case, the IJ's finding can only be upheld based on the reasoning given by him. It cannot be upheld based on the reasons given by the US attorney. So the government recognized the flaws of the IJ's adverse credibility findings. The government argues that because his nationality is in question, and because he lied under the oath, and because of demeanour taken together, it can be sustained. But if you look at the IJ's opinion, the first line of his IJ's opinion, he starts the 21-page opinion, the first line he says simply, the petitioner is a 25-year-old single male and native and citizen of Sri Lanka. None of these 21 pages, the IJ has never said that he has any doubt about the nationality of the applicant. The IJ never said that so. Then the respondent argues the client lied on the oath. That is also contrary to the record. In fact, the petitioner made some changes before the hearing. He made certain changes, which normally happens in any immigration court. Before we start the proceedings, if In fact, the IJ said in his opinion, and all these changes were made before he testified under oath. So my client, the petitioner, never lied under oath. All these changes were made prior to the hearing. Then the respondent argues because of demeanour, the IJ's finding can be sustained. If you go through these 21 pages, not a single word IJ talked about the demeanour. IJ never said that because of the demeanour, I don't find the petitioner credible. So all the reasons cited by the respondent cannot be taken into consideration to sustain that adverse credibility finding. Then we go to the second reasoning. The IJ himself said that each of the findings which he made, he himself said, are not serious, are not material, or cannot be taken, does not go to the heart of the claim. If you look on AR 60, the IJ said, why this fact, he was talking about whether Mexico is close to, Canada is close to Mexico, the U.S. is close to Mexico, and then he said why this fact standing alone is not enough to undermine the credibility, it does call the credibility into question. Then we talk about whether the employment. Again, the IJ said, once again, taking along this impossibility and omission from the applicant does not appear significant as it relates. Then at the end of the opinion, the IJ again said, as, as, I'm sorry, once again, this inconsistency, I'm sorry, okay. Let me ask you a question. So in this case, we have this agent Schultz, who's a representative of the United States government, and he submits a declaration saying that they're all, this particular petitioner is part of this group of 23 individuals from Sri Lanka, who all told the same story. And, well, this is what he's saying, and he talks about the LTT and says that it's a terrorist organization. And I'm just saying that, to what extent did the IJ rely on that to make his adverse credibility? Yeah, first of all, Your Honor, the IJ did not state which portion of the testimony of the agent's declaration he took into consideration, but he simply stated, he also noted the agent's declaration. But with respect to the agent's declaration, he said that all 23 said the same story. What he said, he said all 23 said they are Tamil, all 23 said they are persecuted by the Tigers. Thousands of cases, the people say the same thing. They go, that's what happens. That does not happen. Their travel route was the same. They all thought they were coming into Canada. You know, with respect to the travel route, yeah, my client corrected the travel route before he testified. But most importantly, our position, even as the IJ himself said, that is neither material nor goes to the heart of the claim in which travel route he takes. So under this court precedence, it must be either material or goes to the heart of the claim. And with respect to the IJ's, the cuts of the IJ's decision, you take all these things together, and then that cancer, the adverse credibility can be sustained. In fact, this court addressed a similar situation two months ago in another case. This is what the court said. Aggregating the suspicions as a totality, to use the IJ's term, does not salvage adverse credibility finding. Stacking one suspicion or conjecture on top of another simply extends but does not strengthen the flimsy house of cards. Counsel, that's only if each one of them is based on speculation. In this particular case, the applicant admitted that he lied on his asylum application. No, Your Honor. Before he signed the application, before he took the oath, he made some correction about the travel route. So initially when he put the application... But he still admitted that the application he had reviewed had wrong information in it. Yeah, that's true, Your Honor. But there are two responses, Your Honor, the court permits. One is that when he went before the judge, before he took the stand and took the oath, he corrected himself. Right, I understand that, but that's still something that was incorrect on the application. That was incorrect, Your Honor. That the judge could say, could interpret as being not honest. That's totally honest. And let me ask you this, in terms of the medical records. Yes, Your Honor. He testified regarding a number of injuries he sustained as a result of beatings and gave some hospital records. And the hospital records only showed he was treated for hepatitis. Yes, Your Honor. Isn't that an inconsistency that the I.J. could rely on for adverse credibility? Two responses, Your Honor. With respect to the medical report, when it was submitted, the I.J. himself stated that the time frame comports with what my client said, that he was tortured. So the second about the hepatitis, the I.J. did not ask a single question about what this discrepancy to the client, to the petitioner. So under this circuit law, in Rajkumar's case, the court has said, if an opportunity is not given to a petitioner, the applicant, to explain the discrepancy, that particular finding cannot be a basis for adverse credibility finding. So our position is, the first, the I.J. himself said the time frame matches. Then with respect to whether it's a hepatite or whether it's a tortuous thing, the petitioner was not asked to explain. So under this circuit law, that cannot be a basis for adverse credibility finding. If we were to grant your client relief, we would remand with instructions for the BIA and I.J. to take the testimony as is and perform the rest of the analysis. Would the BIA be free to decide that he was a Tamil tiger with additional information that may have come out through this investigation and exclude him because he was a member of a terrorist organization that persecuted people in Sri Lanka? There are two responses. First of all, in the agent's declaration, there is nothing mentioned about my client by name. He mentioned some other people by name. He never mentioned my client. And he also said they are members or supporters. There is nothing there that indicates my client was involved in any terrorist activity. So under the law, even if he were a LGBT member, I think under the law he is still eligible for asylum, as long as he is not involved in the petition that was involved in terrorist activity. So I don't think that it is necessary to send it back to the BIA to ascertain. Well, I think in a U.S. v. Ventura, we have to. If we were to say that the actual adverse credibility findings were not supported by the record, then we would have to send it back under California Supreme Court law. Yeah, under Ventura, yeah. But I don't think that, you cannot, I understand. But I don't think that the BIA has to go and start it all over again because my only concern, you know, he's been there for five years in detention. Okay, you're approaching the end of your time, so do you want to sum up? Yes. So, you know, to sum up, the IJ's findings, even if taken individually or cumulatively, under the circuit law, it neither goes to the, neither material nor goes to the heart of the claim. So that's, therefore, that it cannot sustain the adverse credibility finding of the IJ. Thank you. May it please the Court. My name is Genevieve Holm. I represent the respondent, Alberto Gonzalez. The standard in this Court is whether substantial evidence in the record supports the immigration judge's adverse credibility finding, and there is substantial evidence in this record. Your Honor raised the issue of the medical certificate, and that alone would be substantial evidence to support the credibility finding because it goes to the issue of the injuries which Petitioner testified that he received as a result of the torture in this case, and this supports his clear lack of credibility. He himself submitted the documentation. His medical certificate is at Administrative Record 183. He testified that he was arrested by the Sri Lankan Army and was severely tortured. He showed the court scars purportedly caused by Administrative Record 115 that he had been hung from the ceiling naked and beaten with sticks, hung and burned with cigarette butts, tied upside down, immersed in water, and lashed with wire. Yet the certificate that he submitted at Administrative Record 183 showed only that he was treated for hepatitis on one day. His testimony had been that he spent 10 days in the Jaffna Medical Center, a private hospital. That's at Administrative Record 122. Yet the medical certificate is not from the Jaffna Medical Center. So where does the I.J. discuss this in his decision? The I.J. discusses The I.J. discusses the medical certificate as one of the reasons throughout his opinion, Your Honor. And again, the standard is substantial evidence in the record. No, it's not. We have to look at any of the law. Well, he does rely on the medical certificate. If you don't interrupt me, I just found the place I was about to help you out, and you do not interrupt the judge. It's on page 12. Yes, Your Honor. But under our law of the circuit, the I.J. in his decision must give specific poignant reasons articulated in the decision. So we don't go, you know, through the record. We have to evaluate what he said. Yes, Your Honor. And he does rely on the discrepancy between the testimony and the medical certificate. Okay. I just found that. And yes, that's 64. Counsel, what's your response to opposing counsel's argument that he was not given an opportunity to explain any discrepancy between the medical certificate and his testimony? Yes, Your Honor. He was put on notice, an administrative record 109, that his credibility was at issue. And then the immigration judge told him that his hospitalization records were at issue because there was a lengthy discussion at the administrative record 124 to 127 that the administrative, I'm sorry, that the immigration judge wanted the hospitalization records. There was a long discussion about them on those pages. And then at the next hearing date, the petitioner produced the records. But at that point, I mean, counsel's argument is that the specific discrepancy, hepatitis versus injuries for beatings, that that issue was never brought to the attention of the applicant. And therefore, this information cannot be used as an adverse credibility supporting document. So what's your response to that specific argument? There isn't a specific response to that because that was not brought up. But the fact that there was a specific issue about his injuries and about the medical records was absolutely brought to petitioner's notice. So he was given an opportunity to explain? Absolutely, because he had a different hearing date. Where was that? At the second hearing date. The first one was in June and the next one was in August. So he was given an opportunity. He was asked about this discrepancy by the IJ? Not specifically about the hepatitis, Your Honor.  What I was... About the size of the burns, cigarettes versus cigars, where the IJ found that they were too big for cigarettes, for instance. He was not specifically asked by the IJ about the difference in sizes and he was not specifically asked by the IJ about hepatitis. He was asked by the immigration judge about producing his and petitioner provided the hospitalization records. Right, but again, under the law of the Ninth Circuit, the IJ is required to give him an opportunity to explain the purported discrepancy between the record and his description of his injuries. Do you agree that that's the law? He absolutely has an opportunity to respond to the discrepancies, yes. Okay. Then as to his other documentation that he submitted included his father's death certificate that was also discussed on the record that he produced and he was asked about that. Also, he testified that his father had died in the year 2000, but he did admit under cross-examination that he had told the officers at the border that his father had died in 2000 as a casualty of the war, yet the certificate that he submitted showed that he had died in 1994. Again, once he submitted that, he was not asked about that, yet he was questioned about that at the first hearing. Once he submitted his evidence, he was not questioned about it, so the sequence would be the same as for the medical records. As to petitioners having lied on his asylum application and his having admitted that he lied, the implication that the immigration judge discussed was petitioner's willingness to lie. Simply because he admitted that he lied the first time doesn't necessarily mean that he is now telling the truth. What the implication is that it is unknown when the petitioner is telling the truth. That is certainly something that the immigration judge can rely upon as an aspect of a credibility finding, and that is part of the issue in this case, is what part of petitioner's story is the truth. Petitioner has complained about Agent Schultz's report, yet it was stipulated to and not cross-examined at the time of the hearing before the immigration judge, and petitioner's counsel did have an opportunity to cross-examine it, yet did not, and that was at Administrative Record 162. Petitioner's counsel argued that we had argued demeanor in our brief, and while the in his decision, it is implicit that he took that into account in his decision at pages 59 and 64, when he described how petitioner responded to different contradictions, when he described his attorney missed it in quotations about leaving the August of 2000 arrest off the asylum application, and having provided false information on his asylum application because his smuggler told him to. And if there are no further questions, we would ask that this petition for review be dismissed. Thank you, Your Honor. You argue at page 23 that it was implausible for petitioner to believe that he was entering Canada from Mexico? That it was implausible, Your Honor, yes. I'm just wondering, do you know what country supporters Sri Lanka? Your Honor, I believe that was the characterization of the immigration judge. Perhaps he knows. Thank you. All right. Synthra Lincoln versus Gonzalez is submitted, as is Sinithan versus Gonzalez, and United States versus Vega Chike is submitted.
judges: Wardlaw, Rawlinson, Cebull